IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| v. | § | EP-19-CR-1018-DB |
| | § | |
| DANIEL WINSLOW CLINE | § | |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered Defendant Daniel Winslow Cline's ("Mr. Cline") "Motion to Dismiss Indictment" ("Motion"), filed in the above-captioned case on May 22, 2019. On May 28, 2019, the United States of America ("the Government") filed its "Response to Defendant's Motion to Dismiss" ("Response"). On June 3, 2019, Mr. Cline filed his "Reply to Government's Response to Motion to Dismiss Indictment" ("Reply"). On June 5, 2019, the Government filed its "Surreply to Defendant's Motion to Dismiss." After due consideration, the Court is of the opinion that Mr. Cline's Motion should be denied.

## BACKGROUND

On April 3, 2019, a grand jury sitting in the Western District of Texas returned a two-count Indictment ("Indictment"), which charges Mr. Cline with alleged interstate violations of two protection orders in violation of 18 U.S.C. § 2262(a)(1) & (b)(5). Indictment 1–2, ECF No. 16. Specifically, the Indictment alleges that on or about March 4, 2019, and March 9, 2019, Mr. Cline traveled in interstate and foreign commerce with the intent to engage in conduct that would violate a protection order issued on August 27, 2018, in the District Court for Arapahoe County, Colorado and another protection order issued on September 17, 2018, in the County Court for Douglas County, Colorado. *Id.* In the jurisdictions in which the protection orders were issued, the protection orders provided protection against violence, threats, and harassment, as

well as prohibited contact, communication, and physical proximity with Mr. Cline's girlfriend ("G.H."). *Id.* The Indictment alleges that Mr. Cline subsequently engaged in such prohibited contact with G.H. in violation of 18 U.S.C. § 2262(a)(1) & (b)(5). *Id.*

On August 26, 2018, Colorado authorities charged Mr. Cline with strangling G.H. while she was pregnant, forcibly imprisoning her for more than 12 hours, harassing her by striking or shoving or kicking, knowingly or recklessly assaulting her while pregnant, and using a weapon during the commission of a violent crime. Mot. Ex. B, ECF No. 27; Resp. Ex. 1, at 1–2, ECF. No. 31. The next day, on August 27, 2018, Mr. Cline and his counsel appeared at a hearing in the Arapahoe County District Court held before a judge who advised Mr. Cline of his rights before Mr. Cline waived further advisement. Resp. Ex. 1, at 2, ECF No. 31. The judge gave Mr. Cline a copy of the complaint and information. *Id.*

Then the judge considered conditions of bond for Mr. Cline and incorporated a mandatory protection order, along with a domestic violence addendum, into the conditions of his bond after advising Mr. Cline as to the contents of the mandatory protection order. *Id.* at 2–3. Mr. Cline signed and dated the mandatory protection order acknowledging receipt. Resp. Ex. 2, at 1, ECF No. 31. The mandatory protection order gave Mr. Cline notice that he could "apply at any time for the modification or dismissal of this Protection Order." *Id.* at 2.

On August 28, 2018, Mr. Cline had a second hearing at which he was represented by counsel who requested to address bond, but the court ordered bond to remain unchanged. *Id.* at 3. On August 29, 2018, a third bond hearing was scheduled but had to be reset due to Mr. Cline's refusal to be transported to court. *Id.* On August 30, 2018, Mr. Cline and his counsel appeared at his bond hearing where the court set a $1,000 corporate surety bond, which Mr. Cline posted in September 2018. Resp. 2, ECF No. 31.

On September 15, 2018, Mr. Cline was rearrested for domestic violence and for violating the protection order issued by the Arapahoe County District Court less than a month before. Mot. Ex. C and Ex. D, ECF No. 27; Resp. Ex. 3, at 2, ECF No. 31. A public parks officer was notified of a verbal disturbance between Mr. Cline and G.H. Resp. Ex. 3, at 2, ECF No. 31. An officer interviewed G.H. who told him that Mr. Cline had been yelling at her for losing his drugs. *Id.* She also told the officer that she was "currently a victim in a different case with CLINE [sic] as is [sic] the protected party on a [m]andatory [p]rotection [o]rder." *Id.*

On September 17, 2018, Mr. Cline appeared in the Douglas County District Court represented by a public defender. Resp. Ex. 4, ECF No. 31. Mr. Cline was "advised, asked, and acknowledged [of his] [ ] understanding of the conditions of the [mandatory protection order]." *Id.* This second mandatory protection order contained the same provision as the order from the Arapahoe County District Court, including the notice that Mr. Cline could "apply at any time for the modification or dismissal of this Protection Order," however it did not include a domestic violence addendum. *Compare* Resp. Ex. 2, ECF No. 31, *with* Resp. Ex. 5, ECF No. 31.

On March 4, 2019, Mr. Cline and G.H. were headed to a Douglas County court hearing together when they changed course and traveled south toward Mexico. Mot. 2, ECF No. 27 (citing Complaint 2, ECF No. 2). On March 9, 2019, their multi-day road trip ended at the Sierra Blanca checkpoint where Mr. Cline was arrested for violating 18 U.S.C. § 2262, which makes it a crime to travel in interstate commerce with the intent to violate protection orders and to subsequently engage in conduct that violates those orders. *Id.*; Resp. 3, ECF No. 31 (citing Indictment, ECF No. 16).

## STANDARD

According to Federal Rule of Criminal Procedure 12, a defendant may make a pretrial motion to dismiss based on a claimed defect in the indictment, including failure to state an offense. FED. R. CRIM. P. 12(b)(3)(B)(v). To state an offense for interstate violation of a protection order under 18 U.S.C. § 2262(a)(1), an indictment must state:

> [a] person who travels in interstate or foreign commerce . . . with the intent to engage in conduct that violated the portion of a protection order that prohibits or provides protection against violence, threats, or harassment against, contact or communication with, or physical proximity to, another person . . . or that would violate such a portion of a protection order in the jurisdiction in which the order was issued, and subsequently engages in such conduct, shall be punished[.]

While the Federal Rules of Criminal Procedure do not explicitly sanction a defendant's ability to file a motion to dismiss an indictment based on an alleged lack of due process in the state procedures leadings to an underlying offense, the Court will analyze and apply the due process clause of the Fourteenth Amendment: "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1.

## ANALYSIS

Mr. Cline petitions the Court to dismiss the Indictment because the Indictment fails to state a claim when his alleged conduct did not violate a "protection order" as that term is defined in 18 U.S.C. § 2262. Mot. 2, ECF No. 27. Specifically, Mr. Cline first argues that the protection orders did not meet the statutory definition because they were mandatory, printed on a standardized form, and not "issued in response to a complaint, petition, or motion filed by or on

4

behalf of a person *seeking protection.*" *Id.*; Reply 1, ECF No. 35 (emphasis in original). Second, Mr. Cline argues that the protection orders do not meet the second definition in § 2266(5) which requires that the protection order be issued pursuant to state law authorizing the issuance of protection orders to protect domestic violence victims. Mot. 4, ECF No. 27.

Next, Mr. Cline argues that § 2262(a)(1) is unconstitutional because it does not require that a protection order issue in compliance with due process. *Id.* at 5. Finally, Mr. Cline argues that § 2262(a)(1) is unconstitutional as applied to him because Colorado issued his mandatory protection orders without due process. *Id.* at 6.

In its Response, the Government first argues that the two protection orders issued against Mr. Cline are "protection orders" as broadly defined in § 2266, even though they were mandatorily issued. Resp. 3, ECF No. 31. The Government next asserts that § 2266(5)(B) does not apply to this case. *Id.* at 4. Regarding due process, the Government asserts that Mr. Cline should not be allowed to collaterally attack his protection orders as unconstitutional in this Court because to do so would undermine principles of comity and the speedy trial provision of the Constitution. *Id.* at 5–6. Furthermore, this Court is not the proper venue for Mr. Cline to challenge the process of the issuance of the protection orders—the Colorado state courts are. *Id.* at 6. Finally, even if Mr. Cline could mount a constitutional challenge, 18 U.S.C. § 2262 is constitutional facially and as applied. *Id.* at 7. The Court agrees with the Government for the following reasons.

1. **Per 18 U.S.C. § 2262, a "Protection Order" Includes Both of the Mandatory Protections Orders Issued Against Mr. Cline.**

Mr. Cline was subject to qualifying protection orders under 18 U.S.C. § 2262's broad definition, regardless of whether they were mandatorily issued and printed on standard

5

forms, because both were made in response to a motion filed by the state courts in Colorado on behalf of G.H. who was "a person seeking protection." Therefore, Mr. Cline's Motion shall be denied and the Indictment shall stand.

First, nothing in the statutory definition or substantive offense mentions the validity or invalidity of a protection order that mandatorily issued on a "standardized form." Mot. 3, ECF No. 27. Mr. Cline does not cite case law or flesh out an argument regarding these facts, nor could he because this is not a viable attack on the Indictment.

Second, Mr. Cline asserts that the mandatory protection orders issued against him do not qualify because G.H. was not "seeking protection" since she did not "apply for protection in order for the order to issue." *Id.* He highlights that "G.H. did not seek the issuance of these protection orders." *Id.* (citing Exs. B, D). Further, Mr. Cline, without citing to legislative history, claims that "Congress required the alleged victim to have an active interest in the protection order—to be 'seeking protection.'" Reply 2, ECF No. 35.

Switching approaches slightly, Mr. Cline points out that she was also not generally "seeking protection" from Mr. Cline because the police merely "responded to a verbal disturbance and learned that G.H. and Mr. Cline had been 'hanging out' for a couple of hours." *Id.* (citing Resp. Ex. 3, ECF No. 31). Mr. Cline was arrested solely based on the previous Arapahoe County protection order, which also did not show that G.H. was seeking protection. *Id.* at 3 (citing Mot. Ex. B, ECF No. 27; Resp. Ex. 3, ECF No. 31).

According to § 2266(5)(A), "[t]he term 'protection order' [as it is used in § 2262 Interstate violation of protection order,] includes—"

> any injunction, restraining order, or any other order issued by a civil or criminal court for the purpose of preventing violent or threatening acts or harassment against, sexual violence, or contact or communication with or physical proximity to, another person, including any temporary or final order issued by a civil or criminal court whether obtained by filing an independent action or as a pendente lite order in another proceeding so long as any civil or criminal order was issued in response to a complaint, petition, or motion filed by or on behalf of a person seeking protection[.]

As a threshold matter, there is nothing in the statute that requires G.H. to seek a protection order. Congress' use of the phrase "on behalf of a person seeking protection" shows that G.H. need not be the person requesting the protection order, rather, as happened here, a mandatory protection "order issued by a ... criminal court ... on behalf of" G.H.

The Court disagrees with Mr. Cline's narrow interpretation of the statute and agrees with the Government's assessment that Congress intended the definition of a protection order to be broad and inclusive as the plain language of the statute shows. The introductory phrase: "[t]he term 'protection order' *includes*" is notably open-ended and expansive, rather than exclusive and limited. § 2266(5)(A) (emphasis added). Thus, a qualifying protection order may include an order that is not overtly described, arguably including a mandatory protection order that allegedly was not sought on behalf of "a person seeking protection."

Though not necessary to the outcome of this decision, the Court concludes that G.H. was "a person seeking protection." Mr. Cline received his first protection order in Arapahoe County for strangling, assaulting, and falsely imprisoning his pregnant girlfriend, G.H., and while also using a weapon during the commission of these crimes. Mot. Ex. B, ECF No. 27; Resp. Ex. 1, at 1–2, ECF No. 31. About two weeks later in Douglas County, when law enforcement officers responded to a report of a verbal disturbance, G.H. told them that Mr. Cline had been berating her for losing his drugs and that "she was a victim in a different case"

involving him and that there was a mandatory protection order issued against him. Resp. Ex. 3., at 2–3, ECF No. 31.

Because the congressional intent behind making qualifying protection orders broad and inclusive is clear, this Court need not base its decision on the subjective interpretation of a survivor's mental state after enduring such violence. *See* § 2266(5)(A). However, if it had to psychoanalyze G.H., despite the limited factual record before the Court, it would still conclude that G.H. was "a person seeking protection" both when a report was made about Mr. Cline's violent behavior in Arapahoe County and when G.H. told the Douglas County police about her victimization and the resulting mandatory protection order.

Finally, Mr. Cline argues that his protection orders do not fit the definition given in § 2266(5)(b), however, this Court agrees with the Government that this definition is inapplicable to this case because the protection orders here do not contain "any support, child custody or visitation provisions." 18 U.S.C. § 2266(5)(B). Because both mandatory protection orders satisfy the broad statutory definition of a protection order that forms the predicate for interstate violation of a protection order, Mr. Cline's Motion is denied and the Indictment will not be dismissed.

2. **Even Assuming *Arguendo* That Mr. Cline Can Challenge the Constitutionality of the Protection Orders, 18 U.S.C. § 2262 Is Constitutional on Its Face and As Applied to Mr. Cline.**

The Court assumes without deciding that Mr. Cline can challenge the validity of the underlying protection orders issued in Colorado state courts because his protections orders were issued in accordance with due process and § 2262, despite affording no explicit avenue of collateral attack on state-issued protection orders, does not offend the Constitution.

### a. 18 U.S.C. § 2262 Survives a Constitutional Challenge on Its Face Because It Does Not Need to Require That Protection Orders Comport with Due Process.

According to Mr. Cline, the statute that penalizes the interstate violation of a protection order is unconstitutional because it imposes criminal sanctions even if the underlying protection order did not comport with due process. Mot. 5, ECF No. 27 (citing 18 § U.S.C. 2262(a)(1) and *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987)).

Mr. Cline cites *Mendoza-Lopez* for the proposition that the Supreme Court requires there be "some meaningful review of the administrative proceeding" before it is to form the predicate of a subsequent criminal sanction. Mot. 5, ECF No. 27 (citing *Mendoza-Lopez*, 481 U.S. at 838). However, *Mendoza-Lopez* involved the "complete deprivation of judicial review of the underlying deportation proceeding because the respondents' waivers of their rights were not considered or intelligent." *United States v. Davila-Martinez*, 2013 U.S. Dist. LEXIS 64687, No. 2:10-cr-74-001, at *6 (W.D. La. 2013).

The Supreme Court contrasts *Mendoza-Lopez* with *Lewis v. United States*. *Mendoza-Lopez*, 481 U.S. at 840. In *Lewis*, the availability of alternative means to secure judicial review of the underlying conviction that formed a predicate for subsequent federal prosecution set it apart from Mendoza-Lopez's deprivation of review. *Mendoza-Lopez*, 481 U.S. at 841 (citing 45 U.S. 55 (1980)). Thus, far from overruling *Lewis*, *Mendoza-Lopez* reaffirmed the holding in *Lewis*: if there is "the opportunity to challenge the predicate conviction in a judicial forum," then the Constitution does not require another way to collaterally attack an underlying offense before using it as a basis for a later federal prosecution. *See id.*

Thus, facially, the federal statute that criminalizes the interstate violation of a protection order does not need to include a mechanism for collateral attack of a protection order

9

to pass constitutional muster. Furthermore, there was ample opportunity for Mr. Cline to challenge the mandatory protection orders in Colorado state courts, therefore the statute is also constitutional as applied to him.

### b. Section 2262 Is Constitutional as Applied to Mr. Cline Because the Protection Orders Were Issued with Due Process.

Mr. Cline next lodges an as-applied challenge to § 2262 because he was not given "an opportunity to be heard at a meaningful time and in meaningful manner" before the protection orders were mandatorily issued. Mot. 6, ECF No. 27 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). He claims that the multiple hearings he had were not meaningful because entry of the protection orders were mandatory and "shall remain in effect" from arraignment "until the final disposition of the action." *Id.* (quoting COLO. REV. STAT. § 18-1-1001(1)). Mr. Cline admits that the Colorado statute allows him to seek "modification or dismissal of the protection order," § 18-1-1001(3), but qualifies that such a "post-deprivation remed[y]" satisfies due process requirements only in "rare and extraordinary situations[.]" *Id.* at 7 (quoting *Greene v. Greenwood Pub. Sch. Dist.*, 890 F.3d 240, 243 n.2 (5th Cir. 2018) (internal quotation marks omitted).

Mr. Cline highlights that the "dockets reflect that the mandatory protection orders were issued on the same days the complaints supporting warrantless arrests were entered." Mot. 7, ECF No. 27. Without citation, Mr. Cline claims that the discretionary aspects of the protection order, like prohibiting contact, communication, and physical proximity with the alleged victim, can issue without a hearing. *Id.* Finally, the Colorado statute allows the court to issue such restrictions *sua sponte*, or upon the district attorney's motion—which Mr. Cline mentions without drawing a conclusion. *Id.* (citing COLO. REV. STAT. § 18-1-1001(3)). Mr.

10

Cline ends by repeating that he did not have an opportunity to be heard at a meaningful time and manner before the issuance of the mandatory protection orders. *Id.*

What Mr. Cline fails to highlight is that the docket also reflects that on August 27, 2018, not only did a mandatory protection order issue and a complaint supporting warrantless arrest enter, but a hearing on advisement was also given to Mr. Cline at which he appeared along with counsel. Resp. Ex. 1, at 2, ECF No. 31. The allegation that he was not afforded a hearing before the mandatory protection order was issued is dispelled by the record before the Court.

Furthermore, Mr. Cline fails to cite, and this Court is unaware of, any case law that makes the mandatory issuance of a protection order unconstitutional in this context. Mot. 6, ECF No. 27. Nor does Mr. Cline flesh out any argument that the language in the Colorado protection orders "shall remain in effect . . . until final disposition of the action," is unconstitutional. *Id.* Mr. Cline merely lists these aspects of his mandatory protection orders and the Court will not divine as to the conclusion he would have it draw.

In contrast, Mr. Cline attempts to flesh out an argument that the ability to seek modification or dismissal of the mandatory protection order is insufficient to satisfy due process. *Id.* He characterizes this process that Colorado law affords as a "post-deprivation remedy" that rarely affords constitutional due process. *Id.* (quoting *Greene*, 890 F.3d at 243 n.2). In *Greene*, the Fifth Circuit held that Mr. Greene was entitled to a pre-termination hearing before he was deprived of his constitutionally-protected property interest in his employment. 890 F.3d at 242. The Fifth Circuit cites to the Supreme Court's decision in *Cleveland Board of Education v. Loudermill*, which reasoned that "[t]he need for some form of pretermination hearing . . . is evident from a balancing of the competing interests at stake. These are the private interest in retaining employment, the governmental interest in the expeditious removal of unsatisfactory

11

employees and the avoidance of administrative burdens, and the risk of an erroneous termination." 470 U.S. 532, 542–43 (1985). None of these interests are at stake in Mr. Cline's case.

This precedent is made even less relevant by the fact that Mr. Cline was given notice, a hearing, and an opportunity to be heard prior to the issuance of both of his mandatory protection orders, unlike Mr. Greene who was fired without notice, reason, or an opportunity to respond. *Greene*, 890 F.3d at 242. Mr. Cline fails to raise a viable facial or as-applied constitutional challenge to 18 U.S.C. § 2262 because Mr. Cline's mandatory protection orders issued in accord with due process.

## CONCLUSION

After due consideration, the Court finds that Mr. Cline's Motion should be denied. The mandatory protection orders that the state of Colorado issued against Mr. Cline meet the broad definition of a protection order given in 18 U.S.C. § 2262. Finally, the statute penalizing interstate violation of a protection order is constitutional on its face and as applied to Mr. Cline because the mandatory protection orders issued against him comported with due process.

Accordingly, **IT IS HEREBY ORDERED** that Daniel Winslow Cline's "Motion to Dismiss Indictment" is **DENIED**.

SIGNED this _13th_ day of **June 2019**.

THE HONORABLE DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE